IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TRAVIS YOUNG and TRACI YOUNG, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.   24 C 8911 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ASSOCIATED BANK NATIONAL | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Travis Young and Traci Young own a single-family home in Barrington, Illinois.   In 2019, they took out a construction loan from defendant, Associated Bank National Association, to pay for a $454,000 remodel of the home.   But the project did not go as planned—some of the work, they allege, was shoddy, requiring plaintiffs to foot the bill for repair expenses that exceeded the remodel amount.   So they sued defendant in Illinois state court to recover their losses, alleging that defendant breached its loan agreement by failing to ensure that the work was being done right and by approving draws from the loan to the builder without confirming that the builder had builder's liability insurance.   Defendant—which has a main office in Green Bay, Wisconsin—removed to this court based on federal diversity jurisdiction and moved to dismiss the complaint.   In response, plaintiffs amended the complaint, which now asserts three counts: a claim for breach of contract based on a failure to inspect (Count I); a claim for breach of duty to notify plaintiffs of the lack of insurance (Count II); and a claim for breach of implied duty of good faith and fair dealing (Count III).

Defendant has moved to dismiss the amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons, the court grants defendant's motion to dismiss.

## BACKGROUND

Plaintiffs set forth the following allegations in their amended complaint. In 2017, plaintiffs bought a single-family one-story house in Barrington, Illinois. Two years later, they decided to remodel the home, seeking to add a new second story, garage, gathering room, and more. So in early 2020, they approached defendant, a Wisconsin bank holding company, for a construction loan. Defendant assigned Edward Currie, a "Certified Mortgage Planner and Construction Loan Specialist," to work with plaintiffs. Plaintiffs then entered into a remodeling and construction contract with Luxe Home Builders, LLC ("Luxe") in May 2020 to construct the project at a cost of roughly $454,000.

From May to December 2020, plaintiffs communicated with Currie. They informed him that they had no knowledge or experience with, for example, construction loans, construction projects, construction plans and specifications, and construction escrow draws and lien waivers. Currie advised them that as escrow draw requests were submitted by Luxe, defendant's inspector would visit the property and ascertain that the work, materials, and labor needed for that draw were in accordance with the plans and specifications before any funds were disbursed to Luxe through the construction escrow account (which was at Old Republic Title Company).

In September 2020, Travis executed a Construction Loan Agreement with defendant to secure funds up to $960,000. The Construction Loan Agreement, which plaintiffs attach to their amended complaint, states in a "Recital" that the agreement, "along with the Construction Draws

2

Policies and Procedures Form, sets forth the terms and conditions pursuant to which [defendant] agrees to advance the loan to [Travis]."    The Construction Draws Procedures and Policies Form (which is also attached to the amended complaint) includes a provision that states in part:

> In order to process your draw requests as efficiently and timely as possible, please submit the GC statement directly to Lynne.Zaehler@assciated bank.com in order to schedule your inspection. This and all other paperwork required should be sent to your designated Title company. They will submit a draw request to Associated Bank Contract Servicing. Upon approval of the draw, funds will be wired to the Title company for disbursement.
>
> **All draw disbursement requests must be for work completed.    Contract Servicing will review all completed draw requests and all completed inspection reports and verify the funds being requested are in line with the percentage of work completed.** Funds will be disbursed to the designated title company per their instructions. The title company will then disburse the funds to the appropriate party.
>
> The percentage of funds disbursed (this includes funds disbursed at closing) should be in line with the percentage of work completed per the inspection report. For example, if the total construction contract is for $300,000 and $150,000 has been disbursed, the inspection report should reflect the home is 50% or more completed. (Emphasis added by plaintiffs).

The Construction Loan Agreement also further states (at paragraph 5) that defendant shall inspect the property prior to each disbursement to confirm that work completed by Luxe for which a draw is sought complies with the plans and specifications.    The Construction Loan Agreement also provides (at paragraph 2b) for the use of a construction escrow to disburse loan funds to Luxe and states (at paragraph 2d) that "Prior to the first advance of Loan proceeds hereunder . . . The terms and conditions of the Construction Draw Polices [sic] and Procedures are hereby incorporated by reference."    (Quoting the Construction Loan Agreement at ¶ 2(d)).[1]

---

[1]  The copy of the Construction Loan Agreement that is attached to the complaint is missing "Page 2 of 7," which appears to be where paragraphs 2(b) and 2(d) are provided.

Defendant and plaintiffs also signed a Construction Loan Escrow Agreement with Old Republic Title Company for disbursement of loan proceeds describe in the Construction Loan Agreement. An addendum to the Construction Loan Escrow Agreement titled, "Lender's Approval," required (at paragraph 3) defendant to approve each disbursement: "As Lender we hereby certify that an inspection had been made and the work has been completed and materials are in place as indicated by the request for payment on the General Contractor's Sworn Statement and Owner's Statement, if applicable." (Quoting Lender's Approval). This provision was incorporated into the construction loan transaction through the Construction Loan Agreement (at paragraph 2b).

Because plaintiffs had no experience with construction escrows or with inspecting home construction, they relied on defendant to—in accordance with the above written provisions of the Construction Loan Agreement, the Construction Draws Policies and Procedures Form, the Construction Loan Escrow Agreement, and the Lender's Approval—properly inspect the property before each loan disbursement to Luxe and to prohibit draws for work that did not conform to the plans and specifications.

In May 2021, Lynne Zaehler, one of defendant's "Construction Coordinators," sent an email to plaintiffs (which is attached to the amended complaint), representing to them that defendant would be "ordering inspections, etc."

Meanwhile, back in 2020, defendant required Luxe to submit proof of builder's liability insurance, which would provide coverage for any damages to the property during the project. On August 31, 2020, Luxe provided to defendant proof of insurance that Luxe had prepared for a previous lender, which defendant accepted and which named another lender as the insured.

4

From August 2020 to May 2021, defendant asked Luxe to provide proof of builder's liability insurance that named plaintiffs and defendant as insureds. Defendant eventually represented to plaintiffs that Luxe had obtained the proper builder's liability insurance and plaintiffs relied on that representation.

Ultimately, Luxe made various mistakes in remodeling the house, and plaintiffs "incurred construction costs and damages in excess of the construction contract amount" to pay for them. They therefore sued defendant and assert three counts in their amended complaint.

In Count I, plaintiffs assert that defendant breached their contract by failing to inspect the property before disbursing funds to Luxe. According to plaintiffs, defendant and its employees (including Currie, Zaehler, and Bridget Dregalla) "refused and failed to" review all of Luxe's draw requests and inspect the property to confirm that all work, materials, and labor conformed to the plans and specifications and that all materials were on site or at the property in accordance with the plans and specifications. Those same entities, plaintiffs further allege, also allowed funds to be released from the escrow to Luxe without an inspection and without confirming that all work conformed to the plans and specifications or that all materials were on site.

In Count II, plaintiff alleges that defendant breached its duty to notify plaintiffs of Luxe's lack of builder's liability insurance. According to plaintiff, after plaintiffs suffered various damages to the property, plaintiffs were informed that defendant never received proof of the proper builder's liability insurance. Yet defendant approved draws to Luxe even though the request for the proper proof was still pending.

In Count III, plaintiffs further allege that defendant breached an implied duty of good faith and fair dealing. Defendant, plaintiffs allege, "misused" any "inspection discretion" that it

5

had and acted in bad faith by disregarding plaintiffs' expectation of inspections and failing to inspect the property before allowing funds to be disbursed. It also acted in bad faith by disregarding plaintiffs' expectations that defendant would obtain proper insurance benefits for them and by not informing plaintiffs that defendant lacked such insurance benefits.

## DISCUSSION

Defendant moves to dismiss all three counts for failure to state a claim. A valid complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a complaint is to provide notice to the defendant of what the claim is and the "grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must provide the defendant with fair notice of a claim's basis and must be facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. at 679 (cleaned up).

"In reviewing the sufficiency of a complaint under th[is] plausibility standard," the court "accept[s] the well-pleaded facts in the complaint as true" but "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Alam v. Miller Brewing Co., 709 F.3d 662, 666 (7th Cir. 2013)

6

(citation omitted). While this standard does not require "detailed factual allegations," a complaint that merely "tenders naked assertions devoid of further factual enhancement" is insufficient and fails to properly state a claim for relief. Iqbal, 556 U.S. at 678 (cleaned up); see also Zablocki v. Merchants Credit Guide Co., 968 F.3d 620, 623 (7th Cir. 2020) (on motion to dismiss the court "need not accept as true statements of law or unsupported conclusory factual allegations" (citation omitted)).

In determining whether a plaintiff has stated a facially plausible claim, a court may review the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. See Geinosky v. City of Chi., 675 F.3d 743, 745 n.1 (7th Cir. 2012); see also Parungao v. Community Health Systems, Inc., 858 F.3d 452, 457 (7th Cir. 2017). "[A] party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." Geinosky, 675 F.3d at 745 n.1. When the attachments to a complaint conflict with the complaint's allegations, the attachment prevails, and dismissal is warranted if the attachment negates the plaintiff's claims. London v. RBS Citizens, N.A., 600 F.3d 742, 747 n.5 (7th Cir. 2010); see Whirlpool Financial Corp. v. GN Holdings, Inc., 873 F. Supp. 111, 123 n.18 (N.D. Ill. 1995) ("where . . . an exhibit contradicts the assertions made in the complaint itself and reveals facts that foreclose recovery as a matter of law, the exhibit controls"). With these principles in mind, the court turns to each count of the amended complaint.

## Count I

Plaintiffs assert in Count I that defendant breached its contract with plaintiffs. In moving to dismiss, defendant argues that Wisconsin law governs the claim because the parties

expressly agreed to just that in paragraph 15 of the Construction Loan Agreement. Plaintiffs do not dispute this. Nor could they: paragraph 15 states: "Governing law. This Agreement shall be governed by and construed under the laws of the State of Wisconsin." The court thus need not conduct a choice-of-law analysis and can simply give effect to the choice-of-law provision. Facility Wizard Software, Inc. v. Se. Tech. Servs., LLC, 647 F. Supp. 2d 938, 943 (N.D. Ill. 2009); see Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1120 (7th Cir. 1998) ("[I]t is the exceptional circumstance that a federal court, or any court for that matter, will not honor a choice of law stipulation.").

Under Wisconsin law, a breach of contract claim has three elements: (1) formation of a valid contract; (2) breach; and (3) damages caused by that breach. Matthews v. Wis. Energy Corp., 534 F.3d 547, 553 (7th Cir. 2008) (citing Northwestern Motor Car, Inc. v. Pope, 51 Wis.2d 292, 296 (1971)). Defendant's motion here focuses on the second element—breach— that is, whether plaintiffs have plausibly pleaded that defendant "violated materially [the contract's] terms." Nat'l Council of the United States Soc'y of St. Vincent de Paul, Inc. v. St. Vincent de Paul Cmty. Ctr. of Portage Cnty., Inc., No. 16-CV-423, 2017 WL 3575102, at *3 (W.D. Wis. June 1, 2017).

"To state a claim for breach of contract, the claimant must allege a contractually enforceable promise to perform that was not performed, or, stated slightly differently, non-performance of any contractual duty of immediate performance." Id. (cleaned up). Plaintiffs allege here that defendant failed to perform its contractual duty to inspect the property before disbursing funds to Luxe. Defendant argues in its opening brief that this allegation fails under

the express contract language and that Count I thus must be dismissed.

In evaluating defendant's motion to dismiss, the court "must construe the allegations in the Complaint, along with the agreements attached to the Complaint, in the light most favorable to [plaintiffs]." Robinson v. Midlane Club, Inc., No. 94 C 1459, 1995 WL 453057, at *9 n.4 (N.D. Ill. July 28, 1995); see also De Lage Landen Fin. Servs., Inc. v. M.D.M. Leasing Corp., No. 07 C 0045, 2007 WL 4355037, at *2 (N.D. Ill. Dec. 10, 2007) ("contracts attached to a complaint are considered part of the pleadings and may be evaluated for purposes of motions to dismiss" (cleaned up)). But plaintiffs' claim "may be resolved in a motion to dismiss if [it is] barred by the unambiguous terms of the contract, as the interpretation of an unambiguous contract is a matter of law for the Court." Robinson, 1995 WL 453057, at *9 n.4. Or put another way, if the contract is "unambiguous"—meaning not reasonably or fairly susceptible to more than one construction, S. Fin. Grp., LLC v. McFarland State Bank, No. 12-CV-848, 2013 WL 5447994, at *4 (E.D. Wis. Sept. 30, 2013)—it "controls over contrary allegations in the plaintiff's complaint," McWane Inc. v. Crow Chi. Indus., Inc., 224 F.3d 582, 584 (7th Cir. 2000); see Schmidt v. Bassett Furniture Indus., No. 08-C-1035, 2009 WL 3380354, at *5 (E.D. Wis. Oct. 20, 2009) ("The unsupported and conclusory allegations of the complaint cannot control over the clear and unambiguous language of the Dealer Agreement."). Thus, if the contract unambiguously shows that defendant here had no duty to perform as plaintiffs have alleged, the court should dismiss the claim. See McWane, 224 F.3d at 584 (affirming dismissal of breach of contract claim where the agreement unambiguously showed that defendant owed no duty to conduct a due diligence investigation).

Defendant argues that this is precisely the case here. The Construction Loan Agreement,

it argues, unambiguously provides that any rights that defendant had to inspect were solely for defendant's—not plaintiffs'—benefit.   According to defendant, the complaint alleges that the Construction Loan Agreement states at paragraph 5 that defendant "***shall*** inspect [the Barrington House] prior to each disbursement to confirm that work completed by [the General Contractor] for which a draw is sought is in compliance with the Plans and Specifications."   (Quoting Amended Complaint at ¶ 19 (brackets and emphasis by defendant)).   But, defendant argues, paragraph 5 "makes clear" that defendant "has no such obligation."   Rather, paragraph 5 states that defendant "shall be entitled (***but is not required***) to inspect the Improvements prior to each disbursement."   (Quoting Construction Loan Agreement, ¶ 5(a) (emphasis by defendant)).   And paragraph 5(c), it further notes, states in part that:

> **BORROWER(S) HEREBY ACKNOWLEDGES AND AGREES THAT ANY INSPECTIONS PERFORMED BY LENDER OR BY A THIRD-PARTY AT LENDER'S REQUEST PURSUANT TO SECTION 5 ARE FOR THE SOLE PROTECTION AND BENEFIT OF LENDER AND, IN NO CASE, MAY ANY SUCH INSPECTION BE RELIED UPON BY BORROWER(S) OR BE CONSTRUED BY BORROWER(S) AS A REPRESENTATION BY TO BORROWER(S) CONCERNING THE IMPROVEMENTS AND LAND.**
> (Bolding and capitalization in original)

Thus, defendant concludes, "the plain language of the Construction Loan Agreement precludes any claim based on [defendant]'s supposed failure to inspect the work performed by [Luxe]."

In response, plaintiffs argue that the complaint "alleges [defendant] failed to inspect the Barrington House, not that [it] inspected and then relied on . . . faulty inspection reports."   So, they argue, the issue here is whether defendant "had a contractual duty to inspect" the property in the first place.   Plaintiffs argue that it did.   According to plaintiffs, although paragraphs 5(a) and 5(c) suggest that they cannot rely on defendant's inspections, "other construction loan management documents . . . promised inspections would be made" before defendant approved

10

loan disbursements.   They point to the Construction Draws Policies and Procedures Form, the Construction Loan Escrow Agreement and Lender's Approval, and Zaehler's email in support. They further assert that paragraph 5(a)'s language—"but is not required [to inspect]"—"appears to be ambiguous" and must "be construed against the drafter."

In reply, defendant argues that plaintiffs have no basis to claim that the "but is not required" language is "ambiguous or unclear."   In fact, defendant asserts, the Construction Draws Policies and Procedures Form "reinforce[s] that it is Plaintiffs who had the ultimate responsibility to approve the work being performed by the General Contractor that they hired," citing second page of that document, which states that "[i]t is the responsibility of the borrower(s) to review the draw request[s]" and that "the borrower(s) is acknowledging he/she is in agreement with the dollar amount being requested and the work completed is to their satisfaction."   And, defendant contends, even if that form did "impose[ ] an obligation on [defendant] to conduct inspections," it would be negated by the Construction Loan Agreement's express statement that, "[t]o the extent that the Construction Draws Policies and Procedures Form conflicts with this Agreement, *this Agreement controls*."   (Quoting Construction Loan Agreement at 1 (emphasis added by defendant)).

The court agrees with defendant that the Construction Loan Agreement unambiguously provides that defendant had no duty to perform inspections—let alone to do so for plaintiffs' benefit.   Indeed, as defendant points out, the Construction Loan Agreement expressly states in paragraph 5(a) that defendant "shall be entitled (but is not required) to inspect the Improvements prior to each disbursement."   (Emphasis added).   Were that not clear enough, paragraph 5(b) states that defendant "may appoint" a third-party "to inspect the land and improvements, and to

11

prepare inspection or other reports <u>for the benefit of [defendant]</u>." (Emphasis added). Paragraph 5(c) then explains—in bold and all-caps—that plaintiffs "acknowledge[ ] and agree[ ]": (1) that "any inspections performed . . . are for the sole protection and benefit of [defendant] and, in no case, may any such inspection be relied upon by" plaintiffs; and (2) that "it is the responsibly of [plaintiffs] to assure [themselves] (A) of the quality of the workmanship and materials used in the construction, (B) that the dwelling and improvements are built in accordance with the plans and specifications, and (C) that the amounts requested by the [plaintiffs] for any disbursement . . . [are] warranted by the work performed" by Luxe. (Bold and capitalization removed).

Nor can plaintiffs' reliance on the Construction Draws Policies and Procedures Form and the Lender's Approval form save their claim. As for the former, the language plaintiffs rely on does not state that defendant must perform inspections; it at most states that defendant "will review . . . all completed inspection reports." But even if it required defendant to perform inspections, it would not matter: the Construction Loan Agreement expressly states on page 1 that if "the Construction Draws Policies and Procedures Form conflicts with th[e] [Construction Loan] Agreement, th[e] [Construction Loan] Agreement controls." And as for the "Lender's Approval" form, it is a fillable form document—not a separate agreement to perform a duty.

In short, the plain and unambiguous language of the Construction Loan Agreement establishes that defendant had no duty to inspect the property. As a result, plaintiff cannot plausibly plead a breach of contract claim based on its assertion that it suffered damages flowing from defendant's failure to inspect. The court thus dismisses Count I.

## Count II

12

In Count II, plaintiff alleges that defendant breached a duty to notify plaintiffs of Luxe's lack of builder's liability insurance. Defendant asserts in its opening brief that the Construction Loan Agreement does not require defendant to ensure that Luxe had any such insurance. And, defendant contends, the Construction Draws Procedures and Policies Form in fact warned plaintiffs that they would "need to obtain a Homeowner's Insurance Policy along with a Builder's Risk Insurance Rider during construction." (Quoting the Construction Draws Procedures and Policies at "Definitions").

Plaintiffs respond that "Count II is essentially a promissory estoppel claim," which alleges that, "(i) [defendant] demanded that the general contractor . . . provide proof to [defendant] (not Plaintiffs) that he had builder's risk insurance, (ii) [defendant] told Plaintiffs such insurance had been procured, and (iii) [defendant] never advised Plaintiffs of the lack of insurance coverage." In support, plaintiffs cite email exhibits that they attached to the complaint in which Zaehler tells Luxe's representative to provide proof of the builder's risk insurance. Plaintiffs also attach as an exhibit to their response a letter from defendant and argue that defendant said that it "would obtain 'hazard insurance on the property used as collateral in your residential mortgage loan,'" and that it "'may purchase insurance at your expense.'" (Quoting Exhibit B to response). Plaintiffs thus conclude that defendant "made two promises upon which Plaintiffs reasonably relied: (i) to obtain from the general contractor proof of builder's risk insurance covering Plaintiffs, and (ii) to purchase hazard insurance on the Barrington House."

In reply, defendant argues that plaintiff's now-"clarif[ied]" promissory-estoppel claim fails. That is because, defendant contends: the parties' Construction Loan Agreement is a

"complete defense" to such a claim; plaintiffs have not alleged that any promise was made; and the exhibits to the complaint contradict plaintiffs' assertion that they relied on defendant to ensure that Luxe was insured.

The court first notes that, although the Construction Loan Agreement appears to govern only disputes about the written contract itself, neither party raises a choice of law issue as to plaintiffs' promissory estoppel claim. Both, though, rely on Wisconsin cases in their briefing. "When," as here, "the parties agree on the law governing a dispute and there is at least a reasonable relationship between the dispute and the forum whose law has been selected by the parties, a court may [forgo] an independent analysis of the choice of law issue and apply the parties' choice." Vigortone Ag Prods., Inc. v. PM Ag Prods., Inc., 217 F. Supp. 2d 858, 863 (N.D. Ill. 2001). And because the law on promissory estoppel is substantively similar in both states, the court's "decision would be unaffected by application of either Illinois or [Wisconsin] law." Id. The court thus applies Wisconsin law to plaintiffs' promissory estoppel claim.

To state a claim for promissory estoppel under Wisconsin law, a plaintiff must allege that "(1) he or she received a promise that the promisor should reasonably have expected would induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise did indeed induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise." Baures v. N. Shore Fire Dep't, 2003 WI App 103, 664 N.W.2d 113, 123 (Wis. App. 2003) (cleaned up); see also Eivaz v. Edwards, No. 12-C-910, 2013 WL 989843, at *2 (E.D. Wis. Mar. 13, 2013). "A promise . . . indicates intent by the promisor to be bound, to some degree of specificity, which is judged by an objective standard." Nat'l Council, 2017 WL 3575102, at *5.

14

The court finds that plaintiffs have failed to state a claim for promissory estoppel. For starters, plaintiffs' complaint fails to plausibly allege that defendant made a promise to plaintiffs that defendant would obtain from Luxe proof of builder's risk insurance covering plaintiffs or that it would purchase hazard insurance. The complaint instead at most alleges that defendant demanded that Luxe furnish builder's risk insurance and told Luxe that such insurance was required. The email that plaintiffs point to about hazard insurance, moreover, makes clear that defendant told plaintiffs that plaintiffs were "required to maintain hazard insurance," and if they did not show proof of that insurance, defendant "may"—a term used several times in the email— purchase such insurance. There is simply no plausible allegation here that defendant made a promise to plaintiffs to procure insurance. "Absent a plausible allegation that [defendant] made a promise to [plaintiffs], [their] claim for promissory estoppel must be dismissed." Eivaz, 2013 WL 989843, at *3; see also Nat'l Council, 2017 WL 3575102, at *5 ("there was no alleged promise . . . to rely on. Without establishing this first element of promissory estoppel, defendant cannot state a claim." (Emphasis in original)).

The parties, moreover, had an existing contract that governed their conduct, and "promissory estoppel is inapplicable under Wisconsin law when there is a written contract." Olson v. Bemis Co., 800 F.3d 296, 306 (7th Cir. 2015). And the Construction Draws Procedures and Policies Form—which is part of that written contract—warned plaintiffs that plaintiffs would "need to obtain a Homeowner's Insurance Policy along with a Builder's Risk Insurance Rider during construction":

**Builder's Risk Insurance**
This insurance coverage term is often misunderstood. The name implies the builder carries this insurance. Although the builder typically carries this type of coverage on their business, coverage does not include the buyer or the buyer's lender. You

15

will need to obtain a Homeowner's Insurance Polley along with a Builder's Risk Insurance Rider during construction. Typically, once your home is completed, your insurance agent will allow you to remove the Builder's Risk Rider leaving your Homeowner's Insurance Policy intact. (Bold and underlining in original).

Because plaintiffs fail to state a plausible claim for promissory estoppel, the court dismisses Count II.

## **Count III**

Plaintiffs allege in Count III that defendant breached an implied duty of good faith and fair dealing. According to the amended complaint, defendant acted in bad faith by disregarding plaintiffs' expectation of inspections and by failing to inspect the property. Defendant, plaintiffs further allege, also acted in bad faith by disregarding plaintiffs' expectations that defendant would obtain proper insurance benefits for them.

Defendant contends that this claim must also be dismissed. According to defendant, although every contract under Wisconsin law includes a duty of good faith, that implied convent "imposes a relatively limited obligation" and "is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." (Quoting Non Typical Inc. v. Transglobal Logistics Grp. Inc., No. 10-C-1058, 2011 WL 1792927, at *6 (E.D. Wis. May 11, 2011)). Given the agreement's plain language here, defendant says, plaintiffs cannot claim that they contemplated that defendant would inspect for their benefit, and there are no allegations that the defendant failed to inspect so as to take opportunistic advantage of them. Nor, defendant contends, does the complaint provide anything other than conclusory allegations that defendant's failure to ensure that Luxe had builder's risk insurance was done in bad faith, and

16

the emails attached to the complaint show that plaintiffs were "in the loop" on the issue. Thus, defendant argues, plaintiffs cannot state a plausible claim.

In response, plaintiffs argue that under Wisconsin law, alleging that a party took "opportunistic advantage" of another is not the sole way to support a breach of good faith claim. Rather, they assert, bad faith can also include "inaction," "evasion of the spirt of the bargain," and "lack of diligence and slacking off." (Quoting Foseid v. State Bank of Cross Plains, 197 Wis. 2d 772 (Wis. Ct. App. 1995)). Ultimately, they contend, "[d]enial of a bargained-for benefit will suffice." Plaintiffs argue that the amended complaint here alleges that defendant "slacked off, failed to exercise diligence, evaded an obligation to inspect, denied a benefit, and thereby caused substantial harm." And they point to the Construction Draw Policies and Procedures Form and to Zaehler's email saying that defendant "will be ordering inspections, etc.," and assert that these materials "[c]reated a reasonable expectation that [defendant] w[ould] conduct inspections."

In reply, defendant asserts that plaintiffs have made clear that their claim is based on defendant's "supposed failure to conduct inspections" before "making disbursements," and that plaintiffs have "implicitly conced[ed] that" they can show neither bad faith nor that defendant took opportunistic advantage of them. According to defendant, plaintiffs argue that they were denied a "bargained-for benefit." But, defendant asserts, that argument fails: defendant "expressly disavowed any obligation to conduct inspections in the Construction Loan Agreement"; "the parties further expressly agreed that even if [defendant] undertook any inspections, those inspections were solely for the benefit of [defendant]"; and "the Construction Policy required Plaintiffs themselves to review and approve of any disbursement."

17

Once again, both parties agree that Wisconsin law applies here. For the same reasons discussed above as to choice of law, the court will also apply Wisconsin law in analyzing plaintiffs' breach of good faith claim. "Under Wisconsin law, every contract implies good faith and fair dealing between the parties to it, and a duty of cooperation on the part of both parties." Betco Corp., Ltd. v. Peacock, 876 F.3d 306, 310 (7th Cir. 2017) (cleaned up). This creates a duty that "is halfway between a fiduciary duty (the duty of *utmost* good faith) and the duty merely to refrain from active fraud." Id. (citation omitted) (emphasis in original).

"A party may breach its implied duty of good faith when it follows the letter but not the spirit of an agreement." Id. (cleaned up); cf. Foseid, 197 Wis.2d at 796 ("[A] party may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled."). That is because "the duty of good faith accompanies not just what the contract says but also what the parties expected to occur." Betco, 876 F.3d at 310. To this end, "the party accused of bad faith" must have "actually denied the plaintiff the intended benefits of the contract." Id. (citing Zenith Ins. Co. v. Emplrs Ins. of Wausau, 141 F.3d 300, 308 (7th Cir. 1998) (applying Wisconsin law)). This means that even if a contracting party acted in bad faith, the plaintiff cannot succeed on a breach of the duty of good faith claim if the party acted without injuring or destroying the plaintiff's ability to receive the benefits of the contract. Id.

Plaintiffs have not pleaded a plausible breach of good faith and fair dealing claim here. As for the inspections, plaintiffs cannot plausibly claim here that defendant's alleged failure to inspect undermined their expectations or injured or destroyed their ability to receive the benefits of the contract. Again, the parties expressly agreed in paragraphs 5(a)-(c) of the Construction

18

Loan Agreement that defendant was "not required" to conduct inspections and that, if it did, those inspections were solely for the benefit of defendant. Even more importantly here, paragraph 5(c) further expressly warned plaintiffs not to have any expectation that defendant's inspections would ensure the quality of the construction:

> **BORROWER(S) FURTHER ACKNOWLEDGES AND AGREES THAT IT IS THE RESPONSIBILITY OF BORROWER(S) TO ASSURE HIMSELF/HERSELF/THEMSELVES (A) OF THE QUALITY OF THE WORKMANSHIP AND MATERIALS USED IN THE CONSTRUCTION, (B) THAT THE DWELLING AND IMPROVEMENTS ARE BUILT IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS, AND (C) THAT THE AMOUNTS REQUESTED BY THE BORROWER(S) FOR ANY DISBURSEMENT OF LOAN PROCEEDS HEREUNDER IS WARRANTED BY THE WORK PERFORMED BY THE GENERAL CONTRACTOR AND/OR ANY SUBCONTRACTOR IN CONNECTION WITH THE AMOUNTS FOR WHICH BORROWER(S) HAS REQUESTED DISBURSEMENT** (Bold and capitalization in original).

The Construction Draws Procedures and Policies Form—on which plaintiffs place much weight—reinforces this admonition. It states on page 2 that "[a]t least one borrower must approve every draw request via a signed authorization" and that "[b]y signing/dating this form, the borrower(s) is acknowledging he/she is in agreement with the dollar amount being requested and the work completed is to their satisfaction."

So even if defendant exhibited a "lack of diligence" or "slack[ed] off" by failing to inspect, as plaintiffs contend, its inaction could not plausibly have undermined plaintiffs' reasonable expectations or denied plaintiffs the intended benefits of the contract. Put simply, the contractual documents attached to plaintiffs' complaint foreclose plaintiffs' breach of implied good faith and fair dealing claim to the extent that it is based on the failure to inspect. See Northgate Motors, Inc. v. Gen. Motors Corp., 111 F. Supp. 2d 1071, 1082 (E.D. Wis. 2000) (dismissing breach of good faith and fair dealing claim and noting

that "the language of" the agreements attached as exhibits to the complaint "controls"); see also Whirlpool, 873 F. Supp. at 123 n.18 ("where . . . an exhibit contradicts the assertions made in the complaint itself and reveals facts that foreclose recovery as a matter of law, the exhibit controls").

As for the builder's liability insurance issue, plaintiffs do not meaningfully respond to defendant's argument that they fail to state a claim based on this issue. The only mention of the issue appears in a single sentence in which plaintiffs say that "Count III . . . alleges Plaintiffs' inexperience regarding construction loan management, construction escrow procedures, and proper builder's insurance for the Project." Their argument focuses instead entirely on the inspection issue. Plaintiffs have thus waived their claim to the extent that it is based on the insurance issue. Jones v. Connors, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim."); Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument [in a motion to dismiss]—as the [plaintiffs] have done here—results in waiver.").

They fail to state a claim based on it, anyway. For one thing, plaintiffs have conceded that the insurance issue is not based on any written agreement. That dooms the claim: "the duty [of good faith and fair dealing] imposes a relatively limited obligation on the parties and is not a basis for creating rights not expressly included in the contract." Northgate Motors, 111 F. Supp. 2d at 1082. For another, plaintiffs have not otherwise

plausibly alleged that defendant's actions denied plaintiffs the intended benefits of the contract.

In sum, plaintiffs have not pleaded a plausible claim for breach of implied good faith and fair dealing.   The court thus dismisses Count III.

### CONCLUSION

For the above reasons, the court grants defendant Associated Bank National Association's motion to dismiss the amended complaint [13].

So ordered.

**ENTER:**

Robert W. Gettleman
**United States District Judge**

**DATE:     May 3, 2025**

21